### 55325. CARASIK GROUP v. CITY OF ATLANTA et al.
### 55326. BERKSHIRE LIFE INSURANCE COMPANY v. CARASIK GROUP et al.

MCMURRAY, Judge.

On January 26, 1970, KFC National Management Company entered into a lease with the predecessors in interest in a lease with the owners of property on Gordon

Road, Atlanta, Georgia, known as the Carasik Group, the name being taken from one of the joint owners thereof. Berkshire Life Insurance Company held a deed to secure debt encumbering the entire shopping center including the leased premises by KFC. The lease stated it was to be used "exclusively for the operation of an H. Salt Take Home Fish & Chips outlet, or for other commercial purposes . . ." The following excerpts are taken from the lease around which this entire case revolves: "If the whole of the demised premises or such portion thereof as will, in the opinion of the Lessee, exercised in good faith, [make the premises unusable for the purpose herein leased][1] shall be taken or condemned by any competent authority for any public use or purpose during the term of this Lease then this Lease shall terminate from the date when possession of the part so taken shall be required for the use and purpose for which it is taken, . . ." As to partial termination of the lease we find the following: "If a portion of the premises is so taken or condemned, but the remaining portion is usable for the purposes herein leased, this Lease shall continue, but only as to such remaining portion." The H. Salt Take Home Fish & Chips outlet was later closed, and in November of 1974, KFC sub-leased the premises for the operation of a Chinese restaurant, at a reduced rental, both parties to the sub-lease entering that agreement with the understanding that condemnation proceedings were imminent.

In January, 1975, the City of Atlanta initiated the condemnation proceedings to widen Gordon Road. This involved an actual taking of approximately 12 feet of the KFC leased property, specifically five parking places along the front of the facility and only seven to eight feet separating the building from the sidewalk, a space insufficient to permit front parking. The condemnation proceeding was brought by the city against a number of

---

[1] All the parties, including the trial court, admit this language contained in the brackets above to be in the lease, but it is omitted from the copy of the lease attached to the record.

owners and businesses in the shopping center but we are only concerned here with the Carasik Group, Berkshire Life Insurance Company, and KFC National Management Company, with reference to the taking of a portion of the property on which the H. Salt Take Home Fish & Chips outlet was located.

In its answer KFC submitted that it was entitled to all condemnation proceeds applicable to its leasehold interest and to a complete termination of the lease. A special master hearing was held, and a sum was awarded to the Carasik Group as condemnees in the amount of $5,454, "as the actual market value for that portion of the property under ground lease to KFC. . ." No consequential benefits or damages were found as to the remaining property. The special master found that KFC failed to prove any damages to it since it had sub-leased the property in question approximately one year before the acquisition of the property and approximately two years after remaining vacant, thereby indicating any loss it had sustained occurred approximately three years prior to the condemnation suit. She refused to rule on whether or not the lease should be terminated. Whereupon KFC filed an exception to the special master's findings, rulings and award in refusing to terminate the lease and finding that KFC was not damaged and to the finding that the Carasik Group was not entitled to additional damages to it by reason thereof. KFC also made a motion to recommit the award of the special master for further action and appealed the award of the special master to the superior court who had appointed the special master.

On August 1, 1975, the trial court accepted the award of the special master but subsequently set the judgment and decree of August 1, 1975, aside on August 5, 1975. On March 4, 1976, the trial court granted KFC's motion to recommit the award of the special master and ordered her to pass upon the termination issue and if the special master found there was a lease termination she was directed to proceed under the question of damages sustained by the lessors as a result of the lease termination. Thereafter, on August 19, 1976, the court ordered and adjudged the property under lease to KFC to be condemned and vested in the City of Atlanta.

However, on July 9, 1976, the Supreme Court of Georgia rendered the decision in *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358, 361 (227 SE2d 362), wherein that court held that a special master could not determine contractual rights by the two contesting condemnees holding this was a matter for determination by the trial judge. Whereupon on September 9, 1976, the trial court ordered that the issues of compensation and termination of the contract would be determined by the court, that is, if it ruled in favor of KFC in regard to termination of the lease then the court would try any additional questions relating to damages suffered by the Carasik Group.

Thereafter, on December 23, 1976, the trial court made its findings of fact and conclusions of law, "that the property is not now usable for fast-food service," and that no question had been raised by the lessor as to KFC's good faith opinion in terminating as provided in the lease agreement. The court concluded as a matter of law that a provision in a contract requiring the performance of one party to be satisfactory to the other is valid and enforceable citing *Commercial Mtg. &c. Corp. v. Greenwich Savings Bank,* 112 Ga. App. 388 (145 SE2d 249). It, therefore, ordered and adjudged that KFC was entitled to termination of the lease "since in its opinion, exercising good faith, the premises are now unusable for the purposes originally leased."

Whereupon, Berkshire Life Insurance Company filed its notice and claim (an equitable lien) upon any award for damages made to the Carasik Group as a result of the lease termination. On August 17, 1977, the trial court ruled the Carasik Group condemnees as a matter of law, was not entitled to additional damages as a result of the lease termination, thereby entering judgment in favor of the City of Atlanta and against the Carasik Group. In Case no. 55325 the Carasik Group appeals from the rulings of December 23, 1976, and the order of August 17, 1977. In Case no. 55326 Berkshire Life Insurance Company also appeals from these two orders both of which are alleged to be adverse to it. *Held:*

1. Our first consideration of this case deals with enumerations of error that the trial court erred in finding there was evidence in the record that the property is not

now usable for fast food service; no question was raised as to KFC's good faith opinion in terminating the lease as provided therein and in holding that the general rule controlling the facts is stated in *Commercial Mtg. &c. Corp. v. Greenwich Savings Bank,* 112 Ga. App. 388, supra. The trial court did not err in its construction of the contract in applying the *Commercial Mtg. &c. Corp.* case, supra, which holds that parties may lawfully agree that their contract may be terminated by depending upon satisfaction of one of the contracting parties, acting honestly and in good faith, in the termination thereof. The cancellation of the contract here depended upon the opinion of the lessee exercised in good faith, that when the whole or a portion of the premises were taken or condemned by any competent authority for any public purpose or use during the term of the lease the premises were made unusable for the purposes for which it was leased. The evidence here was sufficient to authorize the trial court, as finder of fact, to determine that the lessee in exercising good faith had determined in its opinion that the premises were not now usable for the purpose originally leased, albeit there was evidence from which the trial court would have been authorized to have found otherwise. In considering the evidence this appellate court cannot substitute its judgment for that of the trial court where there is evidence to support the judgment. See *Stricklin & Co. v. Crawley,* 1 Ga. App. 139 (2) (58 SE 215); *Bailey v. Lurlee, Inc.,* 131 Ga. App. 546, 547 (206 SE2d 529); *Lester Colodny Const. Co. v. Allen,* 129 Ga. App. 545 (199 SE2d 917); *Wilkins v. Wilkins,* 234 Ga. 404, 405 (216 SE2d 302). The trial court did not err in making its determination that the lessee could in good faith cancel the lease agreement in that the property is not now usable for the fast food service intended by the contract.

2. The finding of the special master made no determination that the lease was cancelled and also made no determination that the lessor was entitled to consequential benefits or damages as to the remaining property. Whereupon KFC filed an exception to the special master's findings, rulings and award in refusing to terminate the lease, that KFC was not damaged and to the finding that the Carasik Group was not entitled to

additional damages to it by reason of the cancellation. It sought to recommit the award of the special master for further action and appealed the award of the special master to the trial court. This motion was granted, and the special master was ordered to pass upon the termination issue and if the special master found the lease terminated to proceed to the question of damages sustained by the lessor as the result of the lease termination. However, based on the decision in *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358, 361, supra, holding that a special master could not determine contractual rights by the two contesting condemnees, the trial court then ordered that the issue of compensation and termination of the contract would be determined by the court. Under the above circumstances even though the lessor did not appeal from the award of the special master, the issues of termination of the lease and compensation were ordered heard by the trial court. Clearly, the court was correct in its interpretation of the *Zuber Lumber Co.* case that the special master could not determine contractual rights. The trial court proceeded to do so as has been considered and ruled upon here in Division 1. We now have in question the issue of whether or not the court was correct in ruling upon the issue of compensation by the court, that is, whether or not the trial court erred in determining as a matter of law that the lessor (Carasik Group- condemnees) is not entitled to additional damages as the result of the lease termination. Clearly, it has been determined that the lease was properly terminated by the lessee in good faith as the result of the action of the condemnor in taking part of the property facing the street. Accordingly, the lessor, as the fee simple owner, has been further damaged by the taking. As Judge Frankum so succinctly stated in *State Hwy. Dept. v. Thomas,* 115 Ga. App. 372 (1), 376 (154 SE2d 812), the damages to the owner are to be determined by "the value of that which the owner has lost rather than that which the condemnor has gained," and "an owner of property taken should be paid for what is taken from him," that is, what the owner has lost. The owner must be justly and adequately compensated not only for the value of the land taken but also for whatever damages result to the condemnee from

the condemnation proceeding. See also *Bowers v. Fulton County*, 221 Ga. 731 (2, 3), 734 (146 SE2d 884). Accordingly, the trial court erred in finding as a matter of law that the lessor-owner (the Carasik Group as condemnees, including the interest of the first lien holder, Berkshire Life Insurance Company) was not entitled to additional damages as the result of the lease termination.

*Judgment affirmed in part and reversed in part. Quillian, P. J., and Webb, J., concur.*

ARGUED FEBRUARY 7, 1978 — DECIDED
JUNE 15, 1978.

*Parks, Eisenberg, Weinstein & Glassman, David S. Eisenberg,* for appellant (Case no. 55325).

*J. M. Harris, Jr., John D. Jones, Gregory J. Digel,* for appellees (Case no. 55325).

*Glass & Shaifer, J. A. Shaifer, Peter B. Glass,* for appellant (Case no. 55326).

*David S. Eisenberg, J. M. Harris, Jefferson Kirby, III, Greene, Buckley, DeRieux & Jones, John D. Jones, Gregory J. Digel,* for appellees (Case no. 55326).